Our first case of the morning is 419-0564. Ray v. Ray, and for the appellant, Ms. Diamond, and for the appellee, Ms. Weber. Thank you, Mayor Keith. The Court is counseled. This appeal is with regard to the trial court's denial of the petition to modify allocation for parenting time and decision making. The Court made an abuse of discretion and the decision to deny the petition to modify with regard to the young woman, Kia Ray, so that the father, my client, William Gregory Ray, could have primary allocation and decision making with regard to education and extracurricular activities for his older daughter, Kia Ray. That was an abuse of discretion and against the manifest weight of the evidence. This is really a case about a young woman who asked, actually begged, for a learning environment and opportunities, and whose mother, the petition, Susan Ray, is not able or willing to provide, but whose father, Greg Ray, is able and willing to provide both a learning environment and an education that the child so desperately needs and wants. In society, it's hard enough to get some children to learn, to pay attention in school, and to do well. And here we have a young woman who has seen that in the rural farmland community of Rossville in Vermillion County, where not only does her father live, but younger step siblings, her grandparents, her uncle, cousins, all live and are involved in the educational community. They're focused on providing a positive learning environment. And it's an area and a community where Kia Ray, after having experienced the schools and attending school with her It seems like all of this centers around her performance in school. A lot of it does, yes. Right, I shouldn't say that it's exclusively that, but primarily focuses on that. She's in eighth grade. Yes. So, what if we were to reverse the trial court's decision here? What do we know about the high school environment? Well, you can assume, I think pretty fairly, that in the public school, you have the same children who are in the middle school at Jefferson go all to the same high school. It's the same public high school in Champaign. There's two high schools, three middle schools, and so you've got Champaign Central and Champaign Centennial. But all of the kids in that middle school are going to go to that same high school with her. But all of the evidence that was presented to Judge Rosenbaum was very specific to the middle school where she's at currently. The class size, the extracurricular activities available and so forth, both there and in your client's district. But it doesn't seem like, based on what I've read, there was any evidence presented as to the high school level. Is that fair? I think for Rossville, because it's a combined, I think it's a grade school that goes straight into the high school and there's not separate feeder schools. You've got the same children, the same groups that are going in. It's fair to say there wasn't evidence on Central High School or Centennial High School, but I think it's fair to assume that the case to go through, through the court system, because of the various, well, all of the different issues that you all are way too familiar with. And the court could reverse and remand that for information and sort of a sped up schedule on that. But the other problem, the other issue, so a lot of it was certainly on the educational environment in the schools, but the other was really the relationships that are there for Kia-Rae with her mother, the difficulties. And part of that is sort of a sad commentary on, you've got a single mother, she's got two children from the parties relationship, Kia and Walela, and Layla, as she's called, has special needs and so there's a special, well, extra work that's necessary with Layla. And then she has three kids at home. She started her own business. I think she's got another job for at least shortly, until shortly before the trial. She was living in the basement of her parents' house. That's where she had been living with the children. Not the greatest learning environment. And for a young woman like Kia, with the needs to and the desire to learn, and perhaps seeing what her cousins, what her step-siblings have in Rossville, that certainly fed her the idea and the impression that there is better stuff out there. And it's not like it's ice cream and staying up late. It's a positive learning environment where the children, where the class size is 15. Now, maybe in the freshman year of high school, it's not going to be quite 15, although it's the same children that go straight through. So it's not like you've got extra feeder schools going into the high school like you have in the middle schools. But you've got a class size and a class environment and children who have been in the same school, in the Rossville schools, who have learned that we don't accept this loud behavior. We don't accept bullying. We don't accept mouthing off and swearing. We don't accept running around science rooms with scalpels in your hand. It's an environment that has been taught and these children have learned. And it's an additional environment where in Vermilion County and in Rossville, Greg has his parents. His dad has been president of the school board. His mother continues to work there and has been a secretary for 27, 30 years. We've got cousins who are in that same school. I think one, Addison, is in the same year. Laney is a year older. And then you've got younger siblings. And so when Greg is with his dad farming, the kids go straight to grandma's house and after their milk and cookies, it's sitting down to work on their homework. And it's not one of those things where you have to bribe, as Susie has had to. I'll give you a trip to Texas if you go to school every day, if you get to class on time. This is an environment that doesn't involve any bribes. This is what we do. And this is what the cousins have learned. And this is what Kia, congratulations for being so mature for such a young woman, but understands that's a more positive environment and a healthier environment and one in which she wants to learn. Again, this isn't any case like one where you've seen, like a Wyckoff type of example where you have, where one parent allows the kid to have all these freedoms. In fact, it's exactly the opposite. One family, Greg's family, is more strict on issues. We value education. We focus on education. And that's what we do. We don't get bribes. You read because you want to read, not because you get money for reading. Compared to Susie's environment where the tension is so high and the relationship is so caustic between Susie and Kia that even bribing her to read basic books that a little, a young kid, a kid younger than Kia would, should be reading, she gets $25 for and doesn't even want to do it because she's so, there's so much antagonism between mom and kid. And it's these sorts of relationships, as I pointed out in some of the early custody cases, that the courts have seen is important to be able to, or is a reason to modify custody when you've got the school environment and when the child wants that. Now, you're still able in this sort of environment to allow children, and you've got so many different blended or split families, the children to be able to be with their siblings. If the court had followed the limited guardian ad litem's recommendation and granted the motion, you would have Kia on alternate weekends with Layla and in the summer majority time with Layla. And the other weekend, alternate weekend, Layla would come with Greg, and so Kia's with two of her step siblings, half siblings, with Greg, and then with Layla and her other step sibling with Susie on alternate weekends in the majority time in the summer and breaks. In regards to the GAL, GAL didn't talk to any of the teachers, is that right? Did not talk with any of the teachers, that's correct, but did talk with, I believe, well, certainly with Kia. Interestingly enough, and one of the things that this limited guardian ad litem mentioned is he asks each parent to bring the kid in, just in case there's sort of a little bit of pressures on the young child. And what the limited guardian ad litem talked about is when she came with Greg, she certainly talked about how she wanted to live with Greg and go to school in Rossville. When she came with Susie, she didn't say perhaps as many negative things or perhaps tried to talk more positively about Susie, but still was very clear that she wanted to live with Greg and go to school in Rossville. And that's not really where I was going as to her preferences, it was more of the basis for the GAL's recommendation. Basis did not include conversations with teachers. Right, not teachers in Rossville, not teachers at Jefferson. It was with family members, maternal grandmother and mother, and Layla, who is younger than Kia and has some developmental delays, and then discussions with not only dad, Greg, but paternal grandparents. I'm not sure if she talked with paternal uncle, who's a math teacher in Rossville, but then obviously with Kia as well. And even the limited GAL said that it was a close call and he had concerns. He did, and so did the court. The court said this was a very close call. In cases like that where the trial court seems to have been very conscientious in his evaluation of the evidence and made specific credibility findings, what is the role of the appellate court? The appellate court certainly needs to look at whether there was an abuse of discretion. But here you have, and the appellate court should really look at the evidence and especially the issues with regard to the maturity of the child. Did the trial court omit from its consideration some statutory factor that was required to consider? Or is it simply the weight that it gave certain factors that is the basis for the appeal? I think both. There were repeated requests that this court interview Kia, whether it be in chambers or not. And the court continued to delay that and eventually just said, no, we've run out of time. We're going to do this. There were objections certainly by Ms. Ray to any discussions in the court. Well, the limited guardian ad litem has already talked with the child. And indeed he did. And indeed, the limited guardian ad litem said this child has said repeatedly with both parents bringing the child in, she wants to live there. And again, it's because she wants to go to school there. She has a better relationship. She's very close with her father and has very serious issues with her mother. So what was the court going to learn by having her come in and repeat the same things over again? Well, any doubts that the court might have that these issues or these ideas are genuine. What is befuddling to me is this suggestion that, oh, it's. Did he say that there were doubts? He did not say that there were doubts. You're right. But it does appear to be sort of the definition, meet the definition of insanity to do the same thing over and over again and expect different results. Because that's what we're doing with Kia by leaving her in the same environment. Let me ask you a question. Yes. Were there any educators from Rossville that testified? Well, the educators included, I mean, there was. Were there educators that testified, yes or no? Only the president, former president of the Rossville School District, who is Bob Brown, but not teachers. You're right. Were there educators from the middle school, Jefferson, that testified? Yes. And did much of their testimony absolutely contradict some of Kia's assertions? I don't think so. That there was zero tolerance for bullying, that there was no notice of fighting, that she was in an honors class or a class where you had to have honors ability or you wouldn't be in it, that they didn't notice tardiness. And then if it was tardiness, it may have been, at least the judge assumed, it was the kind of thing where you're coming into class a minute late. Some teachers mark that as tardy. Others don't pay much attention to that. With middle schoolers, we're beginning to move toward going to high school. They testified that they, sure, they were concerned about her performance, but part of her performance was messing around with her phone and doing makeup in the classroom. That doesn't sound like maturity to me. And it also sounds like, unless you just assume that teachers follow the party line and say, oh, no, our school is good, those teachers thought they had a reasonable relationship with Suzy, that they had very little, if any, contact with Greg. And they thought that she was salvageable and she wasn't a victim of knife fights or the kinds of things she was describing to her father. Now, is the trial court permitted to take account of that in contrast to family members saying that schools are great in Rossville? With all due respect, yes, they are allowed to do so, but that wasn't really the complete evidence. The honors class that Kia was involved in, she flunked one of them, or at least the class, one she flunked out on. Two, she had increasing numbers of absences and tardies. Why? Why? She walked to school. No, I think her mother dropped her off and dropped her off early for the free lunch program. Well, there's testimony that she walked to school. Okay. She testified to that. Okay. Unless you're going to escort the child in the door and take them to the classroom, students of that age have a propensity to fool around in the hallway or maybe go to the bathroom. And flunking a class isn't necessarily an indictment of the school system. It's an indictment of the child not attending the task. It could be. Or both. That's correct. But there's also the testimony by Greg who went to, who observed classes six to seven times over at Jefferson Middle School in the seventh grade year alone and found every single time chaos in the hallways, chaos in the classrooms. And the court had the right, though, to weigh his credibility against the credibility of the people who were testifying from the school, right? The court did. And you're absolutely right. We should give Greg's testimony a greater weight. Well, my argument is that there was no evidence that there were problems in the Rossville School District. This isn't black and white, but this is opportunity. Well, that's not the question because the issue here is changing the environment. So you're the one who has to establish that there's a sufficient reason why the continuity in the child's life and education needs to be changed. Yes. So it's not a matter of, well, we've got a better deal over here. It's this deal here is so bad that there needs to be an alternative and we have a better deal over here. That's correct. And the judge had to make that assessment. Right. And the judge gave a very lengthy decision going through each of the various factors, weighing them all, talking about how he weighed the evidence. With all due respect, though, he abused that discretion. It was contrary to the manifest weight of the evidence. And the testimony and the evidence showed that it's not just that it's better over in Rossville. Well, let me go back then to a question that Justice Harris started with. If this was so clearly black and white, how is it that the guardian ad litem, who has a very in-depth involvement in talking to all of these people and weighing their information and preparing a report, had a really hard time and really just kind of said, gee, well, maybe it would be better for her over here. How could it be so difficult for that GAL if it is so black and white as you argue? Well, it's because the preponderance of the evidence, the burden is weighed on my client, on Greg, to show it. And so as the limited guardian ad litem pointed out, the kids have lived with Susie for most of their life, since the parties divorced in 2009. But Kia's grades, Kia's ability to learn has become worse and worse, the tardies. And what was also clear was Susie has refused to share information with Greg. And so when Kia was getting absences, tardies, flunking out of school, in-school suspensions, she wasn't even sharing that with Greg. And so he comes late to realizing, oh, my gosh, these are terrible problems. When Kia finally says, I want to go to Rossville. He didn't really take any opportunity to obtain that information on his own. He did. Was he prevented from? There were e-mails that Susie would send to the teachers. She wouldn't copy. She wouldn't provide those to them. No, that's not correct. I'm sorry. Go ahead. I'll go to you. The question wasn't whether she did it or not. The question was, was he prevented from the school getting information? Yes. There were some. And Greg testified to that, to having contacted them. I think one of the teachers even said, oh, well, there was some note in the computer program that says, don't contact dad, just contact mom. So when you have those notes, and he, of course, didn't find out about that until I think we did. That's not even really the answer to the question either. The question is, if he had asked, can I get this information? Can I get this information? Can I get this? Whenever this happens, can I have this? Was there any indication that the administration of the school had said there was going to be no sharing of information with the father? Only that one instance. And otherwise, he did get it. He brought it in. And that's what were some of the exhibits in the evidence for court. Thank you. I see my time is up. Thank you, counsel. May it please the court and counsel. The trial court said in its opinion that this is a case about education. Notably, the trial court did not say this is a case about school. This is a case about grades. And I believe that's because the trial court believes, as I do, that there's a lot more to be learned from school than just getting good grades. Value of effort, respect for teachers, peers, people with different opinions, problem-solving skills, relationship skills, time management, accountability, living in the real world, and somewhat of a stick-to-it-iveness that you have to do when you're struggling. We don't always get do-overs in the world. And I think that in this case, Suzy gets it. She knows there's a lot more to learn. And there's a lot more to having a child succeed than just having a child pass her classes. Greg doesn't get it. And in this case, with respect to Kia, I honestly don't think he really cares. His interest appears to be positioning himself in this litigation to be successful in getting a change in the parental allocation. His desire is for Kia to like him, want to be with him, and in some respects to have some sort of vengeance or hurt against Suzy. That's what drives him. You heard about Suzy's single mother not being able to do all this stuff. Greg, apparently with this great support work, did nothing. Absolutely nothing. In 2014, he agreed that Suzy would have decision-making with respect to education. In 2014, he secured in an order the right to get information, to communicate, to have access to all of the school records. A right beyond which the law already gives him. He did not avail himself of that right. In this case, until after he had filed his petition to modify it. Greg complains that there's an antagonism between Suzy and Kia. Sure. Suzy's been telling Kia no a lot. She's been saying, get your act together a lot. She's been defying Greg by sticking to her principles of no double-piercing the ears, no abuse of the phone at school, and all of these things in the face of Greg undermining her. It's called parenting. The job is to raise your children, to hopefully not disadvantage them, but to enable them the opportunity to do anything they want and are capable of in the world. The job is not to be your child's friend. It is not to be the parent that the kids want to hang out with. Ms. Weber? Yes. It strikes me that everyone involved in a case like this, this is not an unusual case, but everyone from the judges to the lawyers need to avoid looking at things in such extreme terms, such as this party has done everything correctly and this one has done everything incorrectly, and it's a very stark difference. Most of these cases involve a lot of gray area. Your client certainly is engaged in some conduct that, at least based on what I've read, would serve to diminish the ability to communicate, for the father to communicate with her in regards to various parenting matters. And maybe there are some issues, certainly, that father would naturally be concerned about in regards to KR's grades, the bullying aspects, and rightfully would be very concerned about the current environment. I think it would be unrealistic to ignore that reality. The reality is also that the trial court was presented with all of that evidence and determined it was a close case. However, it was going to rule in your client's favor, right? So, at this point, are you simply indicating to the court that given it's a manifest weight of the evidence standard of review, although the trial court determined it's a close case, the standard of review should dictate the result? Or are you going to tell us that it wasn't as close a call as the limited guardian ad litem and the trial court made it appear to be? In my mind, and I guess I'm going to bring with it my personal prejudice of having a 17-year-old daughter and having gone through the 12, 13, 14-year-old years where the relationship between mother and daughter is contentious. I don't view this as a close case. I don't. I think Susie has done everything that she has thought was appropriate and everything that the school told her. Could there have been some different things done by Susie, Greg, or the school? Absolutely. Myself, the kid would have been checking the cell phone at the teacher's desk or not bringing it at all if that's distracting her in class. She'd be sitting in the front of the class if she can't keep herself focused or away from talking with friends. I was that kid who had to sit in the front of the class a couple times because I talked too much. But it's really not the question is whether she's done everything. The question is whether she is doing a good job here for Tia and whether the alternative would be in her best interest. And we don't even know what the alternative is. There was no evidence on what the alternative was with Rossville other than smaller class size. When you say she's done everything, I kind of stop and think to myself, I would think that everything would mean developing a relationship with your ex-husband that makes the circumstance between the two of you something that doesn't affect negatively the child. Especially when you start seeing conflict developing because of that age situation. I really understand what you're talking about. If not before, at least maybe then it was time to marshal forces and decide we need to work on this together because we've got a rebellious young daughter here. We've got issues that we're going to have to be dealing with as she progresses into high school. And maybe we couldn't work together before, but you know what? We need to be working together now. What I get from this record is neither of these parents has any interest in cooperating with the other. I think you're absolutely right on that. I know this case with the divorce and everything was initially starting, there was an order of protection. So I think to some extent that influences my client's willingness or desire to communicate with the father. I think it's inappropriate. I think we have to rise above. I think one of the things people probably don't realize when they divorce is that they get rid of the husband, they get rid of the wife. But in many respects, doing that should be a pledge to almost be a super parent. What I mean by that is it's harder because you actually have to get more involved with this person, have more conversations with them, than you do when the child is actually living in the same home and both parents are observing the same thing. My point was that the trial judge, if I figured it out from a cold record, you kind of figure that the trial judge saw that. Absolutely, and I think he actually mentioned it in his report. I think at the conclusion he admonished both parties and told my client specifically, you've got to keep him involved. I'm not saying you have to go out for coffee, but you do need to email or text him that information. And I agree. I think at a minimum that ought to be done. But I think the trial court recognized that. I think he recognized in some of his stern words at the end there, directly admonished both parties to, if this child is going to have a chance to really succeed to her utmost ability, you guys have to knock it off. And I think that was considered by the court, as was the child's strong desires to live with dad and to try a different school. The court considered all of that. But in light of, I think, Suzy's dedication and all of her efforts, and in light of particularly the objective testimony of the teachers, who really kind of gave a different picture of Kia than what Greg was trying to paint as this troubled child. They're basically saying, you know, she's kind of a good kid, but she gets a little distracted. Or she loses focus a little bit, or she's at that point where, oh, everything's social for girls is such a big deal. You know, the hair, the makeup, the boys, they're just kind of discovering all of this, and you have to keep the balance. And so it's a hard thing to keep a balance, especially with the dang cell phones. But they're really saying she's got the ability, and she's a good kid, and, you know, if you can kind of figure out how to keep her moving slowly in the right direction, she's going to do okay. And, you know, that objective testimony from the teachers, I think the trial court relied on very heavily, not only to determine that Kia could succeed in this school, but also to kind of determine that the teachers in this school, the counselors in this school, were really interested in helping Kia succeed. They wanted her to succeed. She wasn't just one of many other kids that they're pushing through the doors. That's not how they viewed Kia or their involvement with Susie. And so I think when you're looking at credibility of witnesses and trying to balance things, the objective testimony of really, I don't want to say the only folks, but the main folks who have the experience and the education to be giving opinions or passing judgment on this, I think the court rightly weighed that very heavily in its decision, and said, look, these folks here think she can do well. They want her to succeed. And so there's no reason here for us to be making a change that's just based on speculation, based on kind of this hope that she's going to do better. And, you know, I think from a broad view of education, I think it was clearly the appropriate decision. The evidence clearly supported it. I think to make that change on speculation would be erroneous as a matter of law. I think as a matter of public policy, you know, it just would be very hard for me to deal with, because, you know, you get a decision that says, oh, the kid wants to change schools, we're going to let her change schools. My job gets to be a lot busier. I have a lot more clients coming in saying the kid says they want to change schools. And you are having parents, then you're encouraging them to constantly be keeping note, constantly be building up for litigation, instead of investing in their children like they should be. And so that, to me, is problematic. And you're also sending a message to a developing woman that it's okay to not do your best. It's okay to not, you know, listen to mom, not listen to dad or the teachers, because we're just going to always give you a do-over. You're going to always just go somewhere else. And that, I think most people will agree, is not always the most successful road, or the most satisfying road in life. So I think, I hope this court, you know, believes as I do, that Judge Rosenbaum gave every factor a serious amount of consideration, including the maturity of the child, including the educator's testimony, and finds that the trial court's decision was, in fact, the correct one, and that there's no basis for reversing it. Thank you. Thank you. Your ball. Thank you. We're not asking, and my client isn't asking for a do-over. The child isn't asking for a do-over. The child is asking, in fact, begging for an opportunity. The only opportunity she has, the only childhood she has, to have and to be in an environment that supports her education, that supports her ability to learn, and that focuses and provides an environment that will sustain her and sustain her desires to learn. The evidence was that it was that the school that she has and the school that she's in is chaotic. Her mother is not available to be there, nor is there family support to be there on school days to be able to help Suzy, or sorry, to be able to help Kia learn, do her homework, and have the sort of opportunities or support that she needs to be able to do homework to understand it. While in Rossville, she not only has, again, a supportive family environment, but an educational environment that is small enough to recognize when students and young people have problems, whether it's the bullying in the hallways or the classrooms, whether it's the problems with the math or the science issues, that they can intervene, that they can help out, and they can provide the sort of wraparound that today's youth need. It's not just about what's the best school. This isn't a question of a private school up in the Chicago suburbs or Nutria or something like that compared to an inner-city school, although some of the descriptions of the lunchrooms and the classrooms were quite concerning with regard to Jefferson School. But it's also about the... Who made those descriptions? Greg did on personal observation. And the trial court found that he was there primarily on open house days when there would be extra people and parents and possibly siblings in the hallways or in the... I mean, it wouldn't be the same as a learning environment in a classroom-by-classroom if you stayed the whole day on a day when the classrooms were taking place. At least one of the days was an open house day. I believe that the testimony was that there were other days or other times when he went that were not open house days but were days when his children weren't in school over in Rossville, and so he was able to come to observe, to meet with one of the teachers, I think. And that environment, as well as what Kia had described to the limited guardian ad litem, was also of concern, that that environment, the bullying that Kia had described for the limited guardian ad litem as well. And as described, it's that environment that is not completely absent in Rossville but which is handled because the school is set up, the classrooms are small enough, and the environment is small enough that issues are resolved rather than allowed to manifest. Thank you. Thank you. We'll take this matter under advice.